UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                                       )

UNITED STATES OF AMERICA,      )

     v.                                     )
                                              )  Case No.: 1:22-CR-00369-TSC

VLADISLAV OSIPOV,             )

             Defendant.      )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**REPLY OF VLADISLAV OSIPOV TO
THE GOVERNMENT'S OPPOSITION TO HIS
<u>MOTION TO DISMISS THE INDICTMENT</u>**

Mr. Osipov, a Swiss citizen residing and doing business in Switzerland, was indicted by the United States because his company allegedly did business with an entity that was neither alleged to be on the Department of Treasury Office of Foreign Asset Control's ("OFAC") list of Specially Designated Nationals and Blocked Persons ("SDNs") nor alleged to be 50% or more owned by an entity or individual on the OFAC list of SDNs. Specifically, the government alleges that Mr. Osipov's company transacted business with an entity that owned a yacht, an asset that also is not alleged at the time to have been on the SDN list.

The indictment does not allege that the entity that owned the yacht was on the SDN list or that it was owned 50% or more by an entity or individual on the SDN list. Mr. Osipov moved to dismiss the indictment because these allegations fail to state an offense under the United States sanctions regime. The applicable sanctions regulation, 31 CFR § 589.411 (the "Fifty Percent Rule"), specifies that it is unlawful to transact business with an entity that is directly or indirectly 50% or more owned by an SDN, something the indictment does not allege Mr. Osipov did. The

1

government argues that the indictment nonetheless states an offense because 31 C.F.R. § 589.201(b)(1) proscribes transactions "for the benefit of" an SDN. The government's argument fails because it reads this broad "for the benefit of" provision in a vacuum, essentially reading the Fifty Percent Rule out of the regulation rather than reading it in conjunction with the "for the benefit language." When the regulation is read as a whole, as it must be, it is clear that a transaction with an entity that is not an SDN is not considered to be a transaction for the benefit of an SDN, unless the entity is 50% or more owned by an SDN.

The government points to no precedent that supports its extraordinary interpretation and cites no authority that allows the traditional rules of statutory construction to be turned on their head. Mr. Osipov, who was entitled to rely on the more natural and common sense reading of the regulation is now facing criminal prosecution having never been put fairly on notice that the alleged conduct could be considered a violation of United States law.

**I.  Mr. Osipov is not a fugitive, and even if the fugitive disentitlement doctrine were applicable, the Court should decide Mr. Osipov's motion to dismiss a legally defective indictment.**

As set forth more fully in Mr. Osipov's Motion to Dismiss and his responses to the government's briefings filed on July 24, 2023 (Dkt. #10) and August 5, 2023 (Dkt. #13), which are incorporated by reference, Mr. Osipov is not a fugitive. He did not flee the jurisdiction. Mr. Osipov has never been a resident of the United States. *See United States v. Any & all Funds on Deposit in Acct. No. XXXXX-XXXXXXXX at HSBC Bank PLC, 55 Corp. St., Coventry, United Kingdom*, 87 F. Supp. 3d 163, 168 (D.D.C. 2015) (Cooper, J.) (declining to apply the doctrine to a Thai Native who did not reside in the United States and was not in the United States at the time of indictment). He is a Swiss citizen who lived with his family in Switzerland where he owned and operated a business. He was not in the United States at the time of the alleged conduct or at the

time he learned of the indictment. *See United States v. Cornelson*, 595 F. Supp. 3d 265, 270-71 (S.D.N.Y. 2022) (declining to apply the doctrine to a defendant who was not in the United States at the time of the acts alleged in the indictment and had not been in the United States for at least three years prior).

As previously briefed, this Court should follow the Second Circuit's well-reasoned opinion in *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021). The government is incorrect in arguing that the cases it cites form a majority position that is contrary to the ruling in *Bescond*. *In re Kashamu*, 769 F.3d 490 (7th Cir. 2014) was not decided based on fugitive disentitlement. *United States v. Shalhoub*, 855 F.3d 1255 (11th Cir. 2017) was a prosecution for international parental kidnapping from the United States to Saudi Arabia and fugitive status was based on the parent's prior residency in the United States with the child. *See United States v. Shalhoub,* No. 98-CR-00460, 2016 WL 8943847, at *2 (S.D. Fla. Jan. 26, 2016); *see also* Indictment in *United States v. Shalhoub*, No. 98-CR-00460 (S.D. Fl. Jun. 26, 1998) (Dkt. #1).

*Bescond* is a recent decision and directly on point. Further, *Bescond* is consistent with the previous decisions in this District. The government summarily argues that the Court should not consider the in-district holdings in *In United States v. $6,976,934.65, Plus Int. Deposited into Royal Bank of Scotland Int'l, Acct. No. 2029-56141070, Held in Name of Soulbury Ltd.*, 554 F.3d 123, 132 (D.C. Cir. 2009) and *Any & all Funds on Deposit in Acct. No. XXXXX-XXXXXXXX at HSBC Bank PLC, 55 Corp. St., Coventry, United Kingdom*, 87 F. Supp. 3d at 168, because those cases arise in the context of civil asset forfeiture. However, the discussion and determination in civil forfeiture cases of what conduct constitutes flight and fugitive status for the fugitive disentitlement doctrine should not be disregarded in assessing the applicability of that doctrine in criminal cases and the government cites no case contending otherwise. The courts in both cases

3

considered the individual's country of residence, the lack of actual flight from the United States, and the individual's purpose for remaining at home and reached decisions consistent with *Bescond*. *See $6,976,934.65, Plus Int. Deposited into Royal Bank of Scotland Int'l, Acct. No. 2029-56141070, Held in Name of Soulbury Ltd.*, 554 F.3d at 132 ("The government has not satisfied its burden on summary judgment to show that Scott remains outside the United States in order to avoid the pending criminal charges."); *see also Any & all Funds on Deposit in Acct. No. XXXXX-XXXXXXX at HSBC Bank PLC, 55 Corp. St., Coventry, United Kingdom,* 87 F. Supp. 3d at 168 ("mere refusal to reenter the country does not trigger the doctrine."). Like the defendants in *Bescond* and these in-district cases, Mr. Osipov is not present in the jurisdiction simply because he is at home in his country of citizenship.

In any event, the government overstates the fugitive disentitlement doctrine by arguing that it is essentially a jurisdictional bar and that a defendant "may not" seek a ruling from a court while being outside its jurisdiction. (Gov.'t Opp. at 6) The doctrine is not and has never been a bar to prevent courts from considering meritorious motions. The doctrine, even if it were applicable in this case, is a discretionary doctrine that permits courts to determine when it is appropriate to decide motions or appeals filed by fleeing fugitives. *See Bescond,* 24 F.4th at 773 (*"*courts faced with close questions of fugitivity may prefer to decide on a question confided to discretion"). Deciding a defendant's motion challenging the legality of the indictment against him would be an appropriate exercise of the Court's discretion.

The government argues that the Court should decline to resolve the motion because if the defendant loses the motion, he may not appear, characterizing the situation as "heads the defendant wins, tails the government loses." (Gov't Opp. at 1) The government's solution to this supposed problem is to ask the Court to establish a regime in which heads the government wins, tails Mr.

4

Osipov (and any other individual with no ties to the United States whom the government chooses to indict) loses. Under the government's approach, it can charge any individual in the world with a legally defective indictment, in this case with conduct that is not a crime, knowing that a foreign national will not be able to challenge the illegitimate charge unless he or she is willing to leave his or her family and his or her business to come to the United States and, if as for Mr. Osipov, the United States is a country to which he has no ties, he likely would be detained pending resolution of the case.

The government offers no valid reason why it should be excused from facing a motion that an indictment is legally defective before an individual has to uproot his life and submit to detention. Nor has the government offered a persuasive reason why the Court's docket should be clogged indefinitely with indictments whose legal sufficiency has never been established. Even if the Court were not inclined to follow *Bescond* and the other in-district precedents, and were to find that the fugitive disentitlement doctrine applies to a non-resident foreign citizen who was not in the United States at the time of the alleged conduct or at the time he learned of the indictment, and therefore cannot be considered to have fled the jurisdiction, the Court should nonetheless exercise its discretion to reach the merits of Mr. Osipov's motion to dismiss for failure to state an offense.

## II. The indictment should be dismissed for failure to state an offense or, alternatively, failure to give fair notice.

All the transactions described in the indictment are by or with unblocked entities that the indictment does not allege to be 50% or more owned by an SDN. For the purpose of this motion, Mr. Osipov accepts as true all facts as set forth in the indictment.[1]

---

[1] The government claims Mr. Osipov asks the Court to consider facts outside the indictment without specifying any such facts. For each of the facts, except those going to fugitive disentitlement, Mr. Osipov provides a specific citation to where that fact is alleged in the

5

1.  **Both the "for the benefit of" language and the Fifty Percent Rule must be given effect.**

OFAC, the agency responsible for the regulatory scheme, can and does block entities and assets that meet the sanctions criteria regardless of whether they are 50% or more owned by an SDN. OFAC could have listed the entity with which Mr. Osipov allegedly did business and which owned the yacht in question as an SDN. It did not. OFAC could have designated the yacht as a blocked asset at any point prior to the transactions alleged in the indictment. It did not.[2]

Even with OFAC having done neither of these things, if there was a factual basis to do so, the government could have alleged in the indictment that the entity with which Mr. Osipov did business was 50% or more owned by an SDN. It did not. Instead, the government chose to indict Mr. Osipov on the basis that Mr. Osipov did business with a non-sanctioned entity not alleged to be 50% or more owned by an SDN that owned a non-sanctioned asset. The government defends that indictment under the theory that the asset was in some way used "for the benefit of" an SDN, citing 31 CFR § 589.201(b)(1).

Neither the regulation nor any associated published guidance defines or explains the phrase "for the benefit of." None of the cases the government identifies as quoting the "for the benefit" language (Gov't Opp. at 9-10) considers that phrase or analyzes it in any way. Moreover, not one of those cases involves the application of 31 CFR § 589.411, the Fifty Percent Rule, which is the

---

indictment. The government, on the other hand, uses its opposition to add a new allegation stating that Mr. Osipov was the manager of the yacht. (Gov't Opp. at 3) The indictment states the yacht was managed by Co-Conspirator 2, a Spanish Company. (Indictment ¶ 1)

[2] In 2022, after the transactions alleged in the indictment occurred, OFAC for the first time listed the yacht as a blocked asset. This fact is not in the indictment but is provided in footnote 3 of the government's opposition.

6

provision of the regulatory scheme that directly and specifically addresses the transactions in this case.

Contrary to the government's assertion, Mr. Osipov is not asking the Court to ignore the undefined phrase "for the benefit of," but rather, when, as here, the alleged transactions involve doing business with an entity that is not designated as an SDN, to read that phrase in conjunction with and give full effect to 31 CFR § 589.411, the Fifty Percent Rule. The Fifty Percent Rule specifically addresses transactions with entities that OFAC has not designated as SDNs. It provides that only entities owned 50% or more by a SDN will be considered blocked. 31 CFR § 589.411(a)-(b).

Mr. Osipov is not trying to read the "for the benefit of" language out of the regulation or to render it superfluous. 31 CFR § 589.201(b)(1) applies to a variety of transactions, including those with individuals, governments, and entities on the SDN list. Mr. Osipov simply argues that for one specific type of transaction—those with entities not 50% or more owned by a SDN and not on the list of SDNs—31 CFR § 589.411 must also be applied. It is the government's approach that would effectively read out a portion of the regulation. Given that any transaction with an entity in which an SDN has some minority interest could be construed as being "for the benefit of" an SDN, every transaction with a non-blocked entity less than 50% owned by an SDN would be illegal, and the Fifty Percent Rule superfluous. The clear intent of the Fifty Percent Rule is to treat as blocked only transactions with unblocked entities that are 50% or more owned by an SDN.[3]

---

[3] The government contends that Mr. Osipov's reading of the regulation would create a safe harbor for transactions with unblocked entities that are not 50% or more owned by an SDN. A safe harbor creates protection from legal liability if an individual completes certain steps or meets specific conditions. *See, e.g., Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 489 F.3d 1267, 1270 (D.C. Cir. 2007) (describing a provision that protects physicians from legal liability if certain conditions are met). Mr. Osipov does not contend that the sanctions regulations generally

There is no reason to read either the "for the benefit of" language or the Fifty Percent Rule out of the regulation or even to view them as conflicting. Where possible, courts should interpret laws to render a coherent and consistent scheme rather than interpret them to create conflict and ambiguity. *See, e.g., United States v. Panayiotou*, No. 22-CR-55 (DLF), 2023 WL 417953, at *8 (D.D.C. Jan. 25, 2023) (rejecting the government's reading of a provision because it would create irreconcilable conflict with other provisions of the statute); *see also Nell v. Wormuth*, No. 21-CV-3248 (APM), 2022 WL 2702334, at *4 (D.D.C. July 12, 2022) (interpreting a statute to avoid conflict between provisions). As set forth in greater detail in Mr. Osipov's motion, the two provisions are not inherently in conflict with each other. It is only the government's flawed interpretation that makes them so. The most reasonable interpretation, and the only one consistent with the established rules of interpretation, is to reconcile the two provisions by recognizing that the drafters decided to allow transactions with entities that are not blocked and are not 50% or more owned by a sanctioned person or entity. Presumably, they determined that such transactions are not sufficiently "for the benefit of" a sanctioned person or entity that they should be prohibited. Where there is a specific provision in a regulatory scheme, it should be read to govern broad general language. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (the specific governs the general is most frequently applied in regulatory schemes where "a general permission or prohibition is contradicted by a specific prohibition or permission").

---

proscribe transactions with unblocked entities that are not 50% or more owned by an SDN but allow them if certain conditions are met. Rather, he argues that any fair reading of the regulation demonstrates that the regulation does not prohibit transactions with unblocked entities that are not 50% or more owned by an SDN. Such transactions are, therefore, not illegal. Under the government's view, the Department of Commerce Bureau of Industry and Security regulatory sanctions against Cuba, Iran, North Korea, and Syria (the Export Administration Regulations) create a safe harbor for transactions with Canada. Mr. Osipov would put it more simply: the Export Administration Regulations do not make it illegal to do business with Canada.

The indictment against Mr. Osipov is defective because the charges in it describe conduct not proscribed by the plain language of the regulation. Therefore, they do not state an offense and should be dismissed.

2. **If the Court determines that the regulation is ambiguous then the Rule of Lenity requires that the ambiguity be resolved in the Mr. Osipov's favor.**

The government seems to argue that the Rule of Lenity does not apply to IEEPA regulations, citing several cases analyzing different sanctions regimes for different purposes, where courts have declined to apply the Rule of Lenity. Those cases do not, of course, preclude the Court from invoking the Rule of Lenity in relation to any tension between the "for the benefit of" language and the Fifty Percent Rule. If the Court determines that the provisions cannot be reconciled by traditional tools of statutory interpretation and, therefore, the regulation is ambiguous with two plausible readings, the Rule of Lenity applies and requires that the ambiguity be interpreted in favor of defendant. *See Bittner*, 598 U.S. at 101 ("Under the rule of lenity, this Court has long held, statutes imposing penalties are to be 'construed strictly' against the government and in favor of individuals.").

3. **The Court should not accept the government's argument that it should effectively re-write the regulation because, as written, it might encourage SDNs to divest from entities and structure ownership to avoid sanctions.**

The sanctions regime in the United Kingdom blocks transactions with entities fifty percent owned by blocked parties, but in addition, the United Kingdom also blocks transactions with an entity if the designated person has the right to appoint or remove the majority of the board of that entity or has the ability "to ensure the affairs of the entity are conducted in accordance with the person's wishes." *See* Section 4.1 of the Office of Financial Sanctions Implementation ("OFSI")

guidance.[4] The European Union's sanctions regime likewise blocks transactions with entities fifty percent owned by blocked parties, and it also blocks transactions with an entity controlled by or acting at the direction of a blocked entity. *See* EU Commission Consolidated FAQs No. 833/2014 at 22-24.[5]

Had OFAC wanted to adopt a regime like that of the United Kingdom or the European Union that blocked transactions with unblocked entities based on control or beneficiary status in addition to ownership, it could have done so. OFAC instead has determined that ownership rather than control or beneficiary status should govern the blocking of a non-designated entity. *See* OFAC FAQ 398 ("OFAC's 50 Percent Rule speaks only to ownership and not to control. An entity that is controlled (but not owned 50 percent or more) by one or more blocked persons is not considered automatically blocked pursuant to OFAC's 50 Percent Rule.").[6]

Indeed, OFAC specifically considered and addressed the issues raised in the government's opposition to Mr. Osipov's motion to dismiss in FAQs 401 and 402, which address complex ownership structures and divestitures, respectively. OFAC FAQ 401 explains that "indirectly," as used in the Fifty Percent Rule, refers to ownership of shares of an entity through another entity that is 50% or more owned by a blocked person. This FAQ then goes on to provide specific examples for doing business with entities that are not 50% or more owned by an SDN:

> Blocked Person X owns 50 percent of Entity A and 25 percent of Entity B. Entities A and B each own 25 percent of Entity C. Entity C is not considered to be blocked. This is so

---

[4] OFSI guidance available at: https://assets.publishing.service.gov.uk/government/upload s/system/uploads/attachment_data/file/1144893/General_Guidance_-_UK_Financial_ Sanctions__Aug_2022_.pdf.

[5] EU guidance available at: https://finance.ec.europa.eu/system/files/2023-10/faqs-sanctions-russia-consolidated_en_3.pdf.

[6] FAQs are publicly promulgated by OFAC to provide official guidance interpreting OFAC regulations.

10

because, even though Blocked Person X is considered to indirectly own 25 percent of Entity C through its 50 percent ownership of Entity A, Entity B is not 50 percent or more owned by Blocked Person X, and therefore Blocked Person X is not considered to indirectly own any of Entity C through its part ownership of Entity B. Blocked Person X's total ownership (direct and indirect) of Entity C therefore does not equal or exceed 50 percent. Entity A is itself a blocked person, but its ownership of Entity C also does not equal or exceed 50 percent.

*See* OFAC FAQ 401, available at https://ofac.treasury.gov/faqs/401.

FAQ 402 states that if an SDN divests his ownership interest such that the entity becomes less than 50% owned by an SDN, that entity is no longer to be considered blocked so long as divestiture occurs outside the United States and does not involve U.S. persons. *See* OFAC FAQ 402, available at https://ofac.treasury.gov/faqs/402.

When the government has issued official guidance that is at odds with the interpretation it later seeks to apply as the basis for a criminal indictment, it "counts as one more reason yet to question whether its current position represents the best view of the law." *Bittner*, 598 U.S. at 97 (courts may consider the consistency of an agency's views when weighing the persuasiveness of any interpretation the government proffers in court). Here, the official guidance demonstrates that OFAC was aware of the concerns raised by the government in its opposition to Mr. Osipov's motion and made a conscious choice as to how it wished to address those concerns.

OFAC is, of course, free to change course and promulgate a new regulation. If it wishes to proscribe transactions with unblocked entities that are less than 50% owned by an SDN or otherwise controlled by an SDN, it is free to do so. What the government may not do is have this Court rewrite OFAC's regulation to read the way the government wishes it was written and then apply the revised regulation retroactively to Mr. Osipov.

4. **If the government's interpretation of the regulation is adopted, then the indictment should be dismissed on due process grounds.**

Courts should, if possible, read statutes and regulations to avoid constitutional concerns. *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) ("when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail . . . ."). Adopting the government's approach in this case would mean that individuals who were involved in transactions that are not prohibited by the Fifty Percent Rule, which specifically addresses when doing business with an unblocked entity violates the sanctions regime, would not have fair notice that their conduct was unlawful. This is yet another reason why the Court should reject the government's interpretation of the regulation. If the Court were to adopt the government's interpretation, then the indictment must be dismissed because the charges, as applied to Mr. Osipov, would violate Due Process.

In a motion to dismiss, a defendant may challenge a statute as unconstitutional on its face or as applied to the conduct alleged in the indictment. To show that a statute is facially unconstitutional, a defendant must demonstrate that it is unconstitutional in all of its applications. In contrast, an as-applied challenge need only show that the statute is an unconstitutional exercise of congressional power as applied to the defendant. *See United States v. Naik*, No. 19-CR-373 (TSC), 2020 WL 534539, at *2 (D.D.C. Feb. 2, 2020) (internal citations and quotation marks omitted). "As-applied" challenges may be decided at the motion to dismiss phase so long as the issue can be determined from the indictment itself. *See, id.* The defendant need not wait for a jury trial to determine issues of regulatory construction.

The cases cited by the government are general facial challenges rather than challenges to a novel and expansive interpretation that would, if adopted, create a conflict between provisions.

12

*See United States v. Quinn*, 401 F. Supp. 2d 80, 100 (D.D.C. 2005) ("The gravamen of defendants' objection is that the web of statutes, executive orders, and regulations is too complex for the average person to understand what is permitted."); *see also United States v. Amirnazmi*, 645 F.3d 564, 591 (3d Cir. 2011) ("holding the IEEPA regulations are not unconstitutionally vague.'"). The government misconstrues Mr. Osipov's argument as a facial challenge to the "for the benefit of" language in section 31 C.F.R. § 589.201(b)(1). Rather, Mr. Osipov brings an as-applied challenge to the government's contention that he should have known that it was a violation of United States law to do business with an unblocked entity in relation to an unblocked asset where neither has been alleged to be 50% or more owned by an SDN. None of the authority cited by the government provides any basis to defeat that as applied challenge.

Fair notice requires that "a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, would have fair warning of what the regulations require." *Bellion Spirits, LLC v. United States*, 7 F.4th 1201, 1214 (D.C. Cir. 2021). "[T]he law is settled that penal statutes are to be construed strictly, and an individual is not to be subjected to a penalty unless the words of the statute plainly impose it." *Bittner v. United States*, 598 U.S. 85, 102 (internal quotation marks omitted). "[F]air warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *Id.*

Mr. Osipov was not on fair notice that the regulation prohibited business transactions with an unblocked entity that is not alleged to be 50% or more owned directly or indirectly by an SDN. If the regulation is applied to Mr. Osipov based on the conduct alleged in the indictment, the regulation would be unconstitutional as applied to him and the indictment would need to be dismissed on that basis.

## CONCLUSION

All of the transactions alleged in the indictment are subject to the Fifty Percent Rule, which governs a specific type of transaction under the sanctions regime: when a transaction with an entity that is not designated as an SDN is nonetheless blocked but only if the entity is 50% or more owned, directly or indirectly by an SDN. There is no allegation that Mr. Osipov engaged in a transaction with such an entity. Instead of respecting the plain language of the regulation and the official guidance published by OFAC, the government advances a novel and expansive interpretation of the regulation by which a broad and undefined phrase, "for the benefit of," found in 31 C.F.R. § 589.201(b)(1), would subsume the more specific and focused language in the Fifty Percent Rule set forth in 31 CFR § 589.411. This interpretation is not only contrary to the plain language of the regulation, but also ignores relevant principles of statutory construction, specifically that statutes and regulations should be read as a whole to give meaning to each provision, to avoid creating conflict between provisions and that the specific should govern the general, particularly in complex regulatory schemes.

Unlike the government's strained approach, a fair and natural reading of the regulation in question would ignore and nullify neither the Fifty Percent Rule nor the "for the benefit of" language and instead would give both their proper and intended effect. Pursuant to that language and these principles, it can be seen that the authors of the regulation reasonably decided not to block transactions with unblocked entities owned less than 50% by a sanctioned person or entity, even if a sanctioned person may have some minority ownership or some degree of control over the entity because such transactions are not, in the view of the agency responsible for such determinations, sufficiently "for the benefit" of the sanctioned person that they should be

prohibited. A contrary interpretation would result in an unconstitutional application of the regulation to Mr. Osipov, who was not on fair notice that conducting business with an unblocked entity not 50% or more owned, directly or indirectly, by an SDN violated United States law.

The indictment should be dismissed for failure to state an offense. Alternatively, it should be dismissed because the indictment constitutes an unconstitutional application of the sanctions regime to Mr. Osipov.

Dated: November 8, 2023
      Washington D.C.

      /s/
Barry J. Pollack (DC Bar #434513)
HARRIS ST. LAURENT & WECHSLER LLP
1775 Pennsylvania Avenue, NW, Suite 650
Washington, D.C.
(202) 617-5971
bpollack@hs-law.com

*Attorney for Vladislav Osipov*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of November 2023, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

/s/
Barry J. Pollack