UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    )
UNITED STATES OF AMERICA,                           )
                                                    )
    v.                                              )
                                                    )   Case No.: 1:22-CR-00369-TSC-ZMF
VLADISLAV OSIPOV,                                   )
                                                    )
            Defendant.                              )
                                                    )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY OF VLADISLAV OSIPOV TO THE GOVERNMENT'S
OPPOSITION TO MR. OSIPOV'S OBJECTIONS TO THE
<u>MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS</u>**

The Magistrate Judge's Proposed Findings and Recommendations ("the Recommendations") present two issues to this Court for its *de novo* consideration: (1) does the fugitive disentitlement doctrine apply to Mr. Osipov; and (2) if it does apply, should this Court use its discretion under that doctrine to decline to resolve the pending motion to dismiss on the merits. In recommending that the fugitive disentitlement doctrine applies to Mr. Osipov, the Recommendations made three errors. First, the Recommendations relied on erroneous factual assumptions for which there was no basis. The government does not dispute this in its opposition. Second, the Recommendations concluded that the Second Circuit decision in *Bescond* created a clear circuit split with the Sixth and Seventh Circuits and that, as an outlier, *Bescond* should not be followed. However, as discussed in Mr. Osipov's objections and as demonstrated in the government's opposition, the law in the Sixth and Seventh Circuits, like *Bescond*, supports Mr. Osipov's argument that he is not a fugitive and that the fugitive disentitlement doctrine does not apply to him. Third, the Recommendations dismissed out of hand relevant analysis from the D.C. Circuit discussing what conduct makes someone a fugitive.

1

The Magistrate Judge also recommends that, assuming the fugitive disentitlement doctrine is applicable, this Court should use its discretion under that doctrine to decline to decide Mr. Osipov's dispositive motion on the merits. In making that recommendation, the Magistrate Judge invoked certain policy considerations and offered his assessment in favor of the government. The Recommendations failed, however, to address this Circuit's clear policy preference for resolving disputes on the merits. *See Republic of Kazakhstan v. Stati*, 325 F.R.D. 507, 509 (D.D.C. 2018) (A. Jackson, J) ("strong policies favor resolution of disputes on their merits").

This Court reviews the issues raised in Mr. Osipov's Objections to the Recommendations *de novo*. *See* Fed. R. Crim. P. 59(b)(3) (the Court "must consider de novo any objection to the magistrate judge's recommendation"). Mr. Osipov respectfully submits that this Court should not follow the Recommendations. Mr. Osipov is not a fugitive. The fugitive disentitlement doctrine does not apply to him. Accordingly, the Court should address the merits of his motion to dismiss. In the alternative, even if this Court were to determine that the doctrine does apply, this Court should nonetheless exercise its discretion to address the merits of his motion to dismiss.

**I.     The fugitive disentitlement doctrine should not apply to a person, like Mr. Osipov, who has "stayed abroad at home" after being indicted in the United States.**

   *A. The Magistrate Judge was mistaken about facts that he found material to his determination that the fugitive disentitlement doctrine applies to Mr. Osipov.*

The issue of whether the fugitive disentitlement doctrine applies to a person in Mr. Osipov's position on a challenge to the legal validity of a criminal indictment has not been decided by this Circuit. He is a foreign national who was not in the United States at the time of the alleged offense conduct and who has done nothing to hide or secret himself from the authorities here or abroad. He lives at the same residence as he did when the United States indicted him, his home in Switzerland, where he is a citizen and has lived continuously for many years. *See* Declarations of

Mr. Osipov (Exhibit 1 to his Motion to Dismiss (Dkt. No. 29-1) and Exhibit B to Objections to the Recommendations (Dkt. No. 33-2)); *see* Declaration of David Zollinger (Exhibit A to Objections to the Recommendations (Dkt. No 33-1)).[1]

In reaching the conclusion that the fugitive disentitlement doctrine was applicable to Mr. Osipov, the Magistrate Judge erred by assuming facts that were not supported by the record. Specifically, the Magistrate Judge seems to base the Recommendations in material part on the belief that Mr. Osipov failed to present himself to authorities in his country. *See* Recommendations at 4 n.3. As explained in his Declaration (Exhibit B to Objections to the Recommendations (Dkt. No. 33-2)), however, Mr. Osipov did not evade any legal process in Switzerland. In fact, Mr. Osipov had his counsel reach out to Swiss authorities, his counsel apprised Swiss authorities of the charges pending in the United States, and his counsel confirmed that there was no legal process in Switzerland to which he needed to submit.

### B. *Decisions by other circuits.*

The government argues that the Second Circuit's holding in *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021), should not be followed by this Court because "courts must not be in a position where orders can be ignored." (Opp. at 3.) Further, the government argues, as the Recommendations incorrectly concluded, that the law of other Circuits is necessarily in conflict with *Bescond*.

*Bescond*, however, does not require courts to decide motions for fugitives. Rather, *Bescond* goes to what conduct makes someone a fugitive. The Second Circuit held that a defendant's efforts to evade or circumvent U.S. jurisdiction give rise to fugitive status, and absent such efforts, a

---

[1] In considering application of the fugitive disentitlement doctrine, courts may consider facts external to the indictment. *See, e.g., United States v. Cornelson*, 595 F. Supp. 3d 265, 269-70 (S.D.N.Y. 2022).

foreign national who simply remains at home does not become a fugitive for the sole reason that he has been indicted in the United States. *See id.* at 773 ("But if the doctrine were to be expanded to reach someone . . . who stays at home abroad, without concealment or evasion, Congress, not the courts, should weigh the competing issues and values and determine whether such an expansion is warranted."). *Bescond* decided that Ms. Bescond, who was similarly situated to Mr. Osipov, was not a fugitive and, accordingly, the fugitive disentitlement doctrine was simply not applicable. For the same reasons, the fugitive disentitlement doctrine does not apply to Mr. Osipov.

In concluding otherwise, the Recommendations, and the government, wrongly suggest that *Bescond* is an outlier and incompatible with the law of other Circuits. The basis for this conclusion is that the *Bescond* opinion noted that, while its decision is in accord with the Seventh Circuit's opinion in *Hijazi*, 589 F.3d. 401 (7th Cir. 2009), its holding is "arguably contrary" to the Sixth Circuit's opinion in *United States v. Martirossian*, 917 F.3d 888 (6th Cir. 2019) and the Seventh Circuit's opinion in *In re Kashamu*, 769 F.3d 490 (7th Cir. 2014). *See Bescond*, 24 F.4th at 773. As explained below, however, *Bescond* is not, as the government attempts to characterize it, an outlier that should be cavalierly disregarded.

This Court should follow the well-reasoned decision in *Bescond*, regardless of the law in other circuits. In any event, as set forth below, the law of other circuits does not dictate a different result.

1. <u>The Sixth Circuit</u>

As the government must concede, the Sixth Circuit case, *Martirossian,* was not decided on fugitive disentitlement grounds. (Opp. at 6.) The Sixth Circuit declined to hear the case on jurisdictional grounds, finding there was no collateral order, and held that Martirossian had not met the "lofty bar" required to obtain a writ of mandamus. *See Martirossian*, 917 F.3d at 886. The

4

portion of *Martirossian* on which the Second Circuit in *Bescond* based its observation of tension between the Sixth Circuit's approach to fugitivity and its own is *dicta. See Martirossian*, 917 F.3d at 886-89.

### 2. The Seventh Circuit

With respect to the Seventh Circuit, *Bescond* noted two cases that appear to conflict, one of which is consistent with the *Bescond* decision and one of which is in tension with it. *Hijazi*, 589 F.3d. at 412, employed reasoning similar to that of the Second Circuit in *Bescond* ("The fugitive disentitlement doctrine does not apply to a defendant who has never been in the country, has never set foot in Illinois, and owns no property in the United States.") (cleaned up). After *Hijazi* was decided, the district court presiding over *Kashamu* determined that it must follow *Hijazi*. *See United States v. Kashamu*, No. 94-CR-172, 2010 WL 2836727, at *3 (N.D. Ill. July 15, 2010), *aff'd*, 656 F.3d 679 (7th Cir. 2011) ("Under the Seventh Circuit's reasoning in *Hijazi*, the fugitive disentitlement doctrine does not apply to Kashamu.").[2]

The additional Seventh Circuit authority cited by the Recommendations does not alter or revisit that ruling. The subsequent decision in *Kashamu*, 769 F.3d 490, 493 (7th Cir. 2014), which the Second Circuit in *Bescond* characterized as in tension with both *Hijazi* and its own decision, discusses fugitive status in the context of personal jurisdiction and speedy trial rights, not in the context of the fugitive disentitlement doctrine. *See id.* at 493-94. Because "the term 'fugitive' may take on subtly different meanings as it is used in a variety of legal contexts" the two contexts

---

[2] The government notes that the district court opinion was unpublished, which of course, has no bearing on its accuracy with respect to the case history. In a later decision about the availability of 22 U.S.C. § 2291(c)(1) to a private right of action, the court referred to Kashamu as a fugitive but did not revisit the disentitlement doctrine and decided that action on its merits. *See Kashamu v. U.S. Dep't of Just.*, 846 F.3d 934, 936 (7th Cir. 2017).

should not be interchanged. *See United States v. Vaulin,* No. 16 CR 438-1, 2017 WL 3334861, at *4 (N.D. Ill. Aug. 4, 2017).

The 2014 *Kashamu* decision does not purport to overrule or alter *Hijazi*. There is no basis to assume it did so silently. Indeed, in *Vaulin*, which is cited in the government's opposition, a district court within the Seventh Circuit decided after the 2014 *Kashamu* decision, cited *Hijazi* as the Circuit's prevailing authority. *See Vaulin*, 2017 WL 3334861, at *5. Thus, *Hijazi*, which is consistent with *Bescond*, remains good law in the Seventh Circuit.[3]

The government's reliance on another Seventh Circuit case, *United States v. Bokhari*, 757 F.3d 664 (7th Cir. 2014), is misplaced. That case analyzed the fugitivity of a dual U.S./Pakistani citizen who resided in Wisconsin for at least a decade, during which time he allegedly conducted the charged conspiracy to defraud the United States government. The *Bokhari* decision on fugitivity turned on those facts which, as explicitly acknowledged by the court, distinguished him from *Hijazi*. *See id.* at 672.[4]

In sum, *Bescond* is not the outlier the Recommendations and the government paint it to be. An expansion of the fugitive disentitlement doctrine, which the Supreme Court has called "most severe" and "a blunt instrument" (*see Degen v. United States*, 517 U.S. 820, 828 (1996)), to persons like Mr. Osipov is, as the Second Circuit found, better left to "Congress, not the courts, [which]

---

[3] The court in *Vaulin* applied fugitive disentitlement based on tact that distinguished the defendant before it from the defendant in *Hijazi* based on Vaulin's efforts to resist extradition. Because Mr. Osipov has not resisted extradition—indeed there have been no efforts to extradite him—the doctrine does not apply to him.

[4] Even on those facts, the Seventh Circuit used its discretion to decide the case on the merits. *See Bokhari,* 757 F.3d at 672 ("Nevertheless, we elect to reach the merits of Bokhari's comity claim, and will not opine on the fugitive disentitlement issue."). The Seventh Circuit chose to proceed to the merits because "[i]dentifying fugitives for purposes of the disentitlement doctrine can present complicated legal and factual questions." *Id.*

6

should weigh the competing issues and values and determine whether such an expansion is warranted." *Bescond*, 24 F.4th at 773. *Bescond* is well-reasoned and directly on point.

### C.  D.C. Circuit precedent, while not directly on point, is informative.

The D.C. Circuit has considered what conduct and characteristics make someone a fugitive for the purpose of disentitlement in the context of civil asset forfeiture. *See United States v. $6,976,934.65, Plus Int. Deposited into Royal Bank of Scotland Int'l, Acct. No. 2029-56141070, Held in Name of Soulbury Ltd.*, 554 F.3d 123, 127 (D.C. Cir. 2009)) ("*Soulbury*"). The government argues that *Soulbury* should be ignored because the property in asset forfeiture can be seized and, therefore, the policies regarding whether someone should be disentitled are different than those in the criminal context. (Opp. at 8.) *Soulbury*, however, makes no such distinction; nor do the Recommendations rely on this distinction. Because *Soulbury* addressed the conduct and characteristics that make someone a fugitive—the precise issue presently before this Court—the rationale of the D.C. Circuit in *Soulbury* is not only relevant but also informative. *See Soulbury*, 554 F.3d at 132 (finding that someone who had left the United States long before indictment was not a constructive fugitive for remaining abroad rather than coming to the United States for trial).

For all the reasons set forth above and in prior briefings, the fugitive disentitlement doctrine does not apply to Mr. Osipov. Accordingly, this Court should address his motion to dismiss on the merits.

## II.   In the alternative, even if the doctrine were applicable to Mr. Osipov, his motion should be decided on its merits.

The government's opposition leads with a mischaracterization of the Recommendations and the law, stating that under the fugitive disentitlement doctrine this Court *cannot* resolve Mr. Osipov's dispositive motion on the merits. (Opp. at 1.) The Recommendations do not suggest that, even where the fugitive disentitlement doctrine is applicable, the doctrine constitutes a bar to this

Court's ability to decide the motion. Nor is this the law. The cases relied on by the government, *Vaulin*, 2017 WL 3334861, at *5 and *Bokhari*, 757 F.3d at 672–73 (neither of which were relied on by the Magistrate Judge in the Recommendations) show that courts, even where the fugitive disentitlement doctrine applies such that a court would have discretion to avoid the merits, frequently determine that it is better to decide cases on the merits.

In *Vaulin*, the Northern District of Illinois case cited by the government, the district court stated, "the Court is mindful of the admonition by the Supreme Court and Seventh Circuit that district courts should apply the fugitive disentitlement doctrine with caution." *Vaulin*, 2017 WL 3334861, at * 6. The district court also recognized that "invoking the [fugitive disentitlement] doctrine to deny all relief is an extreme sanction to be reserved only for those circumstances in which it is warranted." *See id.* at *3 (citing *Degen*, 517 U.S. at 828–29); *see also Daccarett-Ghia v. Comm'r*, 70 F.3d 621, 623 (D.C. Cir. 1995) ("The fugitive disentitlement doctrine is not unlimited in scope, but extends only so far as a court's authority to control its own proceedings . . . .").

There are strong policy reasons for determining cases on the merits. *See Republic of Kazakhstan*, 325 F.R.D at 509 ("in this Circuit, 'strong policies favor resolution of disputes on their merits'"). Indisputably, there are real-world consequences to being indicted, even for a person living abroad. In *Hijazi*, the Seventh Circuit granted the writ of mandamus based in large part because it recognized the harm caused by indictments, like the one against Mr. Osipov, going unreviewed by the courts. *See Hijazi*, 589 F.3d at 407 ("resolution of the government's right to proceed with this case—will not be forthcoming through the usual procedures").

Here, the government brought an indictment against Mr. Osipov based on a novel and expansive interpretation of the IEEPA that is legally defective. All the charges in the Superseding

8

Indictment rely on that interpretation. The courts do, and should, operate as a check on that type of improper executive action. Thus, even if fugitive disentitlement applied to someone like Mr. Osipov, who is not alleged to have been in the United States at the time of the alleged offense conduct and has neither fled nor otherwise undertaken any efforts to evade legal process, the Court should exercise its discretion under the doctrine to adjudicate whether the indictment states an offense, rather than having a potentially defective indictment sitting on the docket indefinitely.[5]

---

[5] The government raises the specter of a parade of horribles should Mr. Osipov prevail on the merits: failing to rule in the government's favor would undermine "the entirety of the United States' sanctions regime and allow[] all sorts of designated oligarchs, terrorists, human rights abusers, weapons-of-mass-destruction proliferators, and narcotics traffickers to evade the consequences of their designations by operating through front companies and intermediaries." (Opp. at 10-11.) If the government had confidence in its position, it should not be attempting to avoid a decision on the merits by hiding behind the fugitive disentitlement doctrine in a case where the defendant has not fled or evaded legal process. Rather, it would welcome this Circuit's strong preference for a resolution on the merits to set the precedent that Mr. Osipov's merits position is wrong. The government suggests that Mr. Osipov must not be "as confident as he claims to be about the supposed overreach of the Government's charges" (Opp. at 11), because he would like the Court to rule on the merits of his motion without having to uproot his life and come to the United States based on what he argues is a legally deficient indictment. What is telling about the confidence each party places in their respective position, however, is that it is Mr. Osipov who is asking the Court to rule on the merits and the government that is seeking to avoid a merits ruling.

## CONCLUSION

The Court should decline to follow the Magistrate Judge's Recommendations. The fugitive disentitlement doctrine does not apply to Mr. Osipov. Alternatively, even if the doctrine were applicable, the Court should exercise its discretion under that doctrine consistent with the D.C. Circuit's strong preference for resolving disputes on the merits. Either way, Mr. Osipov respectfully requests this Court resolve his motion to dismiss the superseding indictment on the merits.

Dated: November 5, 2024
       Washington D.C.

                                  */s/ Barry J. Pollack*
                                  Barry J. Pollack (DC Bar #434513)
                                  HARRIS ST. LAURENT & WECHSLER LLP
                                  1775 Pennsylvania Avenue, NW, Suite 650
                                  Washington, D.C.
                                  (202) 617-5971
                                  bpollack@hs-law.com

                                  *Attorneys for Vladislav Osipov*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 5th day of November 2024, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

      */s/ Barry J. Pollack*
      Barry J. Pollack